UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

KEITH JEROME WRIGHT,

                Plaintiff,

     v.

SANDOVAL,

                Defendant.

Case No. 1:22-cv-01082-JLT-CDB (PC)

**FINDINGS AND RECOMMENDATIONS REGARDING THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT**

(Docs. 37 & 41)

Plaintiff Keith Jerome Wright is a state prisoner proceeding pro se and *in forma pauperis* in this civil rights action filed under 42 U.S.C. § 1983.

**I.     INTRODUCTION**

The Court issued its Discovery and Scheduling Order on September 13, 2024. (Doc. 28.) Relevant here, the deadline for filing dispositive motions was July 24, 2025. (*Id*.)

On June 27, 2025, Plaintiff filed a motion for summary judgment. (Doc. 37.) On July 17, 2025, Defendant Sandoval filed his opposition brief to Plaintiff's motion for summary judgment. (Doc. 39.)

On July 24, 2025, Defendant filed his motion for summary judgment. (Doc. 41.) On August 4, 2025, Plaintiff filed his reply brief in support of his motion for summary judgment in a document titled "Opposition to Defendant's Opposition to Plaintiff's Motion for Summary Judgment." (Doc. 43.)

The Court granted Plaintiff an extension of time to file an opposition brief to Defendant's motion for summary judgment (Doc. 45), and on August 18, 2025, Plaintiff filed his opposition brief (Doc. 46). On August 29, 2025, Defendant filed his reply to Plaintiff's opposition to Defendant's motion for summary judgment. (Doc. 47.)

## II.    APPLICABLE LEGAL STANDARDS

### *Motions for Summary Judgment*

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials...." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or shows that the materials cited by the movant do not establish the absence of a genuine dispute. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec.*

2

*Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Further, the opposing party must also demonstrate that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587. Nevertheless, "inferences are not drawn out of thin air," and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

### *Fourteenth Amendment: Equal Protection*

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). The Equal Protection Clause does not, however, require that "all prisoners must receive identical treatment and resources." *Hartmann v. Cal. Dep't of Corrs. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (citations omitted). An incarcerated adherent of a minority religion has an equal protection right to "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Shakur v.*

*Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (internal quotation marks omitted).). There is no requirement that "every sect or group within a prison" have "identical facilities or personnel." *Allen v. Toombs*, 827 F.2d 563, 568 (1987) (citing *Cruz*, 405 U.S. at 322 n.2); accord *Hartmann*, 707 F.3d at 1123-24 (finding Wiccan inmates did not have equal protection right to paid chaplain when they had access to a volunteer chaplain).

To demonstrate a plausible equal protection claim, an inmate plaintiff must show either: that Defendant intentionally discriminated against him based upon membership in a protected class, *see Hartmann*, 707 F.3d at 1123; *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005), or that he received disparate treatment compared to adherents of other religions, *see Rouser v. White*, 630 F. Supp. 2d 1165, 1199 (E.D. Cal. 2009). If proceeding under the disparate treatment theory, plaintiff must show the following: (1) he is a member of an identifiable class; (2) he was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Rouser*, 630 F. Supp. 2d at 1199. A plaintiff may satisfy this burden by tendering evidence of disparate treatment sufficient to raise an inference of discriminatory purpose. *Freeman v. Arpaio*, 125 F.3d 732, 737-39 (9th Cir. 1997), *overruled in part on other grounds by Shakur*, 514 F.3d at 884–85; *see Allen,* 827 F.2d at 569 (adopting same approach).

### III.     FACTUAL ALLEGATIONS & SCREENING FINDINGS

Plaintiff is an inmate at the Substance Abuse Treatment Facility ("SATF") in Corcoran, California. (Doc. 1 at 7.) Plaintiff alleges he is of Muslim faith and has embraced its tenets. (*Id*. at 9.) He contends he is entitled to receive Ramadan meals as a part of his religious practice. (*Id*.) Plaintiff alleges that Defendant violated his rights by refusing to provide to Plaintiff and permit him to consume his Ramadan meal, on May 1, 2022, "which was not related to a legitimate penological interest." (*Id*. at 9-10.) Plaintiff contends Defendant is responsible for preparing and issuing inmate meals. (*Id*. at 7.) Plaintiff asserts his religion requires him "to practice and eat his Ramadan meal that is similar to Jewish and Christian, such as Passover and 40 days Lent respectively." (*Id*. at 9.) Plaintiff further alleges he is being treated unequally because Defendant does not deny "Jewish and Christians Passover and 40 days Lent." (*Id*. at 9-10.) He contends this

4

disparate treatment is without any rational basis. (*Id*. at 9, 11.) Plaintiff alleges Defendant has prevented him from engaging in his sincerely held religious beliefs. (*Id*.)

Plaintiff alleges that Defendant has violated his equal protection rights and seeks declaratory relief "that he is entitled to receive his religious meals while he is a California Department of Corrections and Rehabilitation (CDCR) inmate."[1] (*Id*. at 10.) Plaintiff asserts he "was similarly situated to Jewish and Christian and inmates but was being treated unequally." (*Id*.)

At screening, the Court found that Plaintiff stated a cognizable Fourteenth Amendment claim against Defendant Sandoval. (Doc. 11 at 5.) The Court then issued an Order Finding Service Appropriate of Plaintiff's Complaint. (Doc. 12.)

**IV.    SUMMARY OF THE PARTIES' BRIEFING**

***Plaintiff's Motion for Summary Judgment (Doc. 37)***

Plaintiff argues that: (1) "Defendant intentionally threw away Plaintiff's Ramadan meals which consist of morning, lunch, and dinner;" (2) "Plaintiff demonstrated by his evidence that Defendant violated his constitutional rights to religious meals;" and (3) "Defendant is not entitled to qualified immunity."[2] (Doc. 37 at 2.)

In his motion, Plaintiff asserts "Defendant is not entitled to judgment as a matter of law because he violated Plaintiff's 14th Amendment" and later added handwritten notes stating, "8th Amendment and RLUIPA Act [Religious Land Use and Institutionalized Persons Act]." (*Id*.) In support of his motion, Plaintiff attaches his declaration, along with an August 2, 2022 memorandum from SATF Office of Grievances, Associate Warden P. Llamas to SATF Warden T. Cisneros and Central Kitchen timesheet from August 15, 2022 (collectively, Exhibit A), Staff Misconduct Findings definitions (Exhibit B), chart entitled Ramadan Daily Beginning & Ending Time – April/May 2022 (Exhibit C), "Closure Chrono – Staff Misconduct Allegation" dated August 4, 2022 (Exhibit D), and Affidavit of Inmate Hubley (Exhibit E). (*Id*. at 4-17.)

---

[1] For readability, minor alterations, like changing capitalization, have been made to some of Plaintiff's quotations without indicating each change.

Defendant's Opposition

In his opposition to summary judgment, Defendant first argues that Plaintiff did not assert a claim for violations of the Eighth Amendment or RLUIPA in his Complaint. (Doc. 39 at 8-9.) Defendant notes that the Court's Screening Order found that Plaintiff only stated a cognizable claim under the Fourteenth Amendment. (*Id.* at 9 (citing Doc. 11 at 5).) Defendant further contends that Plaintiff's summary judgment motion should be denied because Plaintiff fails to present evidence that he was treated differently than any other religious group or that Defendant intentionally discriminated against him because of his religion. (*Id.* at 9-12.) Finally, Defendant objects to the affidavit of Inmate Hubley as impermissible hearsay. (*Id.* at 12-13.)

Defendant attaches his declaration (Doc. 39-2), the declaration of Correctional Food Manager II D. O'Donaughy (Doc. 39-3), and the declaration of defense counsel (Doc. 39-4), which includes the "Closure Chrono – Staff Misconduct Allegation" dated August 4, 2022, with allegation inquiry report, and August 2, 2022 memorandum from SATF Office of Grievances, Associate Warden P. Llamas to SATF Warden T. Cisneros (collectively, Exhibit 1).

Plaintiff's Reply

In his reply to Defendant's opposition, Plaintiff does not address his notation of Eighth Amendment or RLUIPA violations but centers his argument on his equal protection claim under the Fourteenth Amendment. (Doc. 43.) Plaintiff alleges Defendant fed "Christian, Jewish, non-denomination inmates, which were approximately 900 inmates, but when it came to the Muslims, he deprived Plaintiff of his meals." (*Id.* at 1.) Because Defendant had a calendar when Ramadan commenced and ended, Plaintiff argues that "Defendant knowingly deprived Muslims of Ramadan" meals. (*Id.*) Plaintiff states that "Plaintiff and a group of Muslim inmates spoke to Defendant about not receiving their meals and Defendant stated, 'Ramadan is over and I am not inquiring about it.'" (*Id.* at 2.) Plaintiff contends that his grievance about the missed meal was sustained by the warden; and therefore, he has presented sufficient evidence that Defendant violated the Fourteenth Amendment. (*Id.*)

Plaintiff attached additional copies of the chart entitled Ramadan Daily Beginning & Ending Time - April/May 2022, "Closure Chrono – Staff Misconduct Allegation," and staff

6

misconduct findings definitions. (*Id.* at 6-10.) Plaintiff also attached the Ramadan menu for April 1, 2022 -May 1, 2022. (*Id.* at 7.)

### *Defendant's Motion for Summary Judgment (Doc. 41)*

Defendant confirms that 2022 Ramadan participants received Halal meals instead of mainline meals provided to other inmates, notes that the "Central Kitchen was responsible for providing each facility at SATF with a cart of Ramadan meals for Ramadan participants," but argues that "Defendant Sandoval did not work in the Central Kitchen on May 1, 2022 …[and] was not responsible for preparing the cart containing Ramadan meals for Ramadan participants at SATF on May 1, 2022." (Doc. 41 at 8.) Defendant asserts that "[t]he only occasion in which a mistake occurred concerning providing Ramadan meals at SATF during Ramadan 2022 was on the evening of May 1, 2022." (*Id.* at 9.)

Defendant argues that he is entitled to summary judgment on Plaintiff's equal protection claim because Plaintiff cannot present evidence that Defendant treated him differently from other religious groups. (*Id.* at 12-13.) Defendant argues that "Muslim, Christian, and Jewish Communities are not similarly situated" as those observing Ramadan "because observance is markedly different." (*Id.*) Even if Plaintiff were similarly situated to inmates observing Passover and Lent, Defendant argues that he did not deliberately intend to discriminate against Plaintiff because of his religion and "Plaintiff's belief that others were treated better is purely a conclusory statement unsupported by facts." (*Id.* at 14-15.) Defendant argues that he offered Plaintiff an alternative Halal meal once Defendant realized the Ramadan meal cart did not come from the Central Kitchen, but even if he had not offered an alternative meal, "the error still lies with the Central Kitchen, not Defendant, as they were responsible for providing each facility with a cart of Ramadan meals for Ramadan participants." (*Id.* at 16-17.) Defendant argues that he "mistakenly believe[ed] the hot cart was coming on the last day of Ramadan, as it had all month, [which] is not intentional discrimination" but "a one-time error." (*Id.* at 17.)

Finally, Defendant argues that he is entitled to qualified immunity because he "did not intentionally discriminate against Plaintiff or treat him differently than other similarly situated individuals." (*Id.* at 18.) "Defendant made efforts to accommodate Plaintiff by providing an

7

alternative meal" but "Plaintiff refused this alternative accommodation" and therefore, "there was no constitutional violation" because a "reasonable person would have believed these actions were lawful." (*Id*.) "An error that prevented Plaintiff from receiving a single Ramadan meal is also not clearly established as a violation of the Constitution." (*Id*.)

In support of his motion, Defendant attached his declaration (Doc. 41-5), the declaration of Correctional Food Manager II D. O'Donaughy (Doc. 41-3), the declaration of SATF Community Resource Manager J. Bragg (Doc. 41-4), and the declaration of defense counsel (Doc. 41-6), which includes the "Closure Chrono – Staff Misconduct Allegation" dated August 4, 2022 with allegation inquiry report and August 2, 2022 memorandum from SATF Office of Grievances Associate Warden P. Llamas to SATF Warden T. Cisneros, and February 1, 2022 memorandum from the Director Gipson of the Division of Adult Institutions regarding "Inmate Participation in Ramadan April 2, 2022 through May 2, 2022" and March 9, 2022 memo from Protestant Chaplain Alvarez regarding "Inmate Participation in Ramadan 2022" with the attachment entitled "Ramadan Daily Beginning & Ending Time - April/May 2022" (collectively, Exhibit 2), and excerpts from Plaintiff's deposition transcript (Exhibit 3).

Plaintiff's Opposition

Plaintiff disputes that Defendant provided a second meal for Ramadan participants, "[c]ausing Plaintiff to suffer through the night of evil intent and breaking his religious obligations." (Doc. 46 at 2.) Plaintiff argues that "not feeding the Ramadan participants was deliberate by Defendant through his evil intent." (*Id.*) Plaintiff contends that the SATF warden conducted a staff misconduct inquiry and "found that on May 1, 2022, Correctional Cook N. Sandoval intentionally thew away Plaintiff's religious diet meal for the day." (*Id.*) Plaintiff disputes that Defendant made a mistake because Defendant "has been trained in numerous hours of food services." (*Id.*) Plaintiff argues that "Defendant was the Supervisor cook with complete authority and sole responsibility of food preparation in 'F' yard at SATF on May 1, 2022" and because "Defendant was acting under the color of law," he is excluded from any qualified immunity. (*Id.*)

\\\

8

Plaintiff re-attaches the "Closure Chrono – Staff Misconduct Allegation" and staff misconduct findings (collectively, Exhibit A), the chart titled Ramadan Daily Beginning & Ending Time - April/May 2022 and the Ramadan menu from April 1, 2022 to May 1, 2022 (collectively, Exhibit B). (*Id.* at 6-10.) Plaintiff also attaches his declaration in support of his opposition to Defendant's motion for summary judgment, declaration of inmate Leonard Henderson, and declaration of inmate P. Lewis. (*Id.* at 14-19.)

Defendant's Reply

Defendant argues that Plaintiff fails to present evidence that Ramadan participates were treated differently than Lent or Passover participants. (Doc. 47 at 5-6.) Plaintiff "does not dispute that the Central Kitchen was responsible for creating the evening meal for Ramadan participants on May 1, 2022, not Defendant Sandoval." (*Id.* at 6.) Defendant argues that the declarations attached to Plaintiff's opposition are a sham and should be disregarded because they are a copy of Plaintiff's own declaration, which is inconsistent with Plaintiff's prior testimony, lack personal knowledge, and are based on inadmissible hearsay. (*Id.* at 7-10.)

Defendant argues that Plaintiff fails to meet his burden on the issue of qualified immunity. Defendant argues that of the three cases cited by Plaintiff to establish that Defendant's actions violated clearly established authority, only one mentions the Fourteenth Amendment but none of the three cases address prisoners or religious diets. (*Id.* at 10-12.) As such, Plaintiff fails "to provide any authority which would have put Defendant on notice that they were violating Plaintiff's constitutional rights." (*Id.* at 10.)

Defendant attaches the declaration of defense counsel (Doc. 47-1), which attached the 2022 Ramadan List of Participants by facility (Exhibit 1), March 9, 2022 memo from Protestant Chaplain Alvarez regarding "Inmate Participation in Ramadan 2022" (Exhibit 2), and excerpts from Plaintiff's deposition transcript (Exhibit 3).

**V.    PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS**

In his summary judgment motion, Plaintiff lists the following as undisputed facts:

1.   Sandoval did throw away additional food. See Exhibit A.

2.   There was a discrepancy with the Ramadan meal resulting in Ramadan participants

9

not receiving their meal. See Exhibit A.

3. Definition of sustained. See Exhibit B.

4. Sandoval was [to] provide a Ramadan Daily Beginning & Ending Time – April/May 2022. Exhibit C.[3]

5. On May 1, 2022, Sandoval intentionally threw away Plaintiff's religious diet meal for the day. See Exhibit D.

6. On August 2, 2022, the Warden (T. Cisneros) allegation inquiry was completed in regards to AASTS Log# 20015196/Grievance Log# 254159, and the finding was Sustained. See Exhibit D.

7. Sandoval knew that the Plaintiff and the Ramadan inmates have not ate yet, but he still instructed Correctional Officer Ayon to throw away the food. See Exhibit E.

(Doc. 37 at 3 (bold emphasis omitted).)

**VI.    DEFENDANT'S STATEMENT OF UNDISPUTED FACTS**

Defendant identifies the following as undisputed facts in support of his motion for summary judgment:

1. Ramadan is a holiday observed for one month every year by Muslims around the world. (Plaintiff's Deposition Transcript (Pl.'s Dep. Tr.) at 42:21-23.)

2. Every year, the Ramadan beginning and ending dates vary based on the location and first sighting of the new moon. (Declaration of D. O'Donaughy (O'Donaughy Decl.) at ¶¶ 7, 8.

3. Ramadan participants fast during the day, and only eat between sunset and sunrise. (O'Donaughy Decl. at ¶¶ 7, 8.)

4. The sighting of the moon changes every day, and the time Muslims break their fast in the evening gets later throughout the month. (Declaration of C. Ryan (Ryan Decl.) at Exhibit 2.)

5. The meal Muslims consume in the evening, upon the first sighting of the moon, is

---

[3] Plaintiff misnumbered his list of undisputed facts by repeating the number 3. (Doc. 37 at 3.) The Court reproduces the facts here with the correct numbering.

called Iftar. (Ryan Decl. at Exhibit 2.)

6.  The pre-dawn meals are called Suhoor (sometimes spelled Suhur). (Ryan Decl. at Exhibit 2.)

7.  In 2022, the month of Ramadan started April 1, 2022 and ended at sundown on May 1, 2022. (O'Donaughy Decl. at ¶ 6.) (*See* Doc. 65-2.)

8.  Before Ramadan, a memorandum was sent to SATF staff concerning the start and end dates for Ramadan, which erroneously stated Ramadan ended on May 2. (O'Donaughy Decl. at ¶¶ 5, 6; Ryan Decl. at Exhibit 2.)

9.  At SATF, Ramadan participants are provided a Suhoor bag on the first evening of Ramadan which contains their breakfast and lunch meals, so that they can eat the meals in their cells during the night. (Pl.'s Dep. Tr. at 25:22-25, 26:1-18, 27:10-25, 28:1-3, 28:7-23; O'Donaughy Decl. at ¶¶ 7, 8.)

10. Ramadan participants are also provided Iftar (their dinner meal) to consume at chapel after the sighting of the moon. (Pl.'s Dep. Tr. at 25:22-25, 26:1-18; O'Donaughy Decl. at ¶ 8.)

11. The Suhoor and Iftar meals were delivered to the different SATF Facility Kitchens from the SATF Central Kitchen in a hot cart, containing the specific number of meals for the number of Ramadan participants at that Facility. (Pl.'s Dep. Tr. at 25:22-25, 26:1-18.)

12. These carts would arrive during or shortly after the service of dinner to rest of the incarcerated persons (mainline meal). (Declaration of N. Sandoval (Sandoval Decl.) at ¶ 4.)

13. The Central Kitchen was responsible for providing each Facility at SATF with a cart of Ramadan meals for Ramadan participants. (ECF No. 40. at 6 deeming Defendant's Request for Admissions Set One ¶ 13 admitted.)

14. Ramadan participants would arrive at the Facility Kitchen after their evening prayer around 7:00 p.m. to get their Suhoor bag and Iftar meal and leave with both at approximately 7:15 p.m. (Pl.'s Depo. Tr. at 22:11-19.)

11

15. This continued every day during Ramadan, through April 30, 2022. (O'Donaughy Decl. at ¶ 9.)

16. On May 1, 2022, the last day of Ramadan, Defendant Sandoval was working as a food cook in Facility F kitchen at SATF, where Plaintiff was housed. (Sandoval Decl. at ¶ 6.)

17. On May 1, 2022, the evening meal was served between 5:30 – 6:30 p.m. The first sighting of the moon for Ramadan participants to break their fast occurred at 7:37 p.m. (Sandoval Decl. at ¶ 4; Ryan Decl. at Exhibit 2.)

18. Once the dinner meal for all other incarcerated persons was finished, Defendant cleaned up, throwing away excess food, because he believed the Ramadan meals were still coming on the hot cart from the Central Kitchen. (Sandoval Decl. at ¶¶ 6, 8.)

19. Defendant Sandoval did not work in the Central Kitchen on May 1, 2022. (ECF No. 40 at 6 deeming Defendant's Request for Admissions Set One ¶ 14 admitted.)

20. Defendant Sandoval was not responsible for preparing the cart containing Ramadan meals for Ramadan participants at SATF on May 1, 2022. (ECF No. 40. at 6 deeming Defendant's Request for Admissions Set One ¶ 11 admitted.)

21. The Ramadan participants, including Plaintiff, arrived at the Facility F kitchen around 7:00 p.m., looking for their last Ramadan evening meal. (Sandoval Decl. at ¶ 9.)

22. Because the hot cart had not arrived, Plaintiff called his supervisor. (Sandoval Decl. at ¶ 9.)

23. Defendant Sandoval learned that a hot cart was not coming on the last day, because no Suhoor bag was needed for the following day; Ramadan participants would be joining other inmates for breakfast the next morning. (Sandoval Decl. at ¶ 9, O'Donaughy Decl. at ¶¶ 11, 12.)

24. The Central Kitchen intended for Ramadan participants to eat from the mainline meal, but this was not communicated with Defendant Sandoval. (Sandoval Decl. at ¶¶ 6 - 9, O'Donaughy Decl. at ¶¶ 11, 12.)

\\\

12

25. When Defendant Sandoval learned this, he stayed to create Halal meals for the Ramadan participants, but the Ramadan participants declined to eat the meals he made. (Sandoval Decl. ¶¶ 10 – 12.)

26. The only occasion in which a mistake occurred concerning providing Ramadan meals at SATF during Ramadan 2022 was on the evening of May 1, 2022. (ECF No. 40. at 6 deeming Defendant's Request for Admissions Set One ¶ 21 admitted.)

27. Plaintiff did not speak to or hear any conversations with Defendant on May 1, 2022. (Pl.'s Dep. Tr. at 47-53:17-6; 56:5-7.)

28. Plaintiff does not recall any conversations with Defendant. (Pl.'s Dep. Tr. at 83-84:23-1.)

29. In 2022, Defendant was new to working at the SATF Facility kitchen. (Sandoval Decl. at ¶ 1.)

30. Defendant is a Spanish speaker, and English is somewhat difficult for him. (Sandoval Decl. at ¶ 2; Ryan Decl. at ¶ 4.)

31. Defendant Sandoval has no issues with the Muslim community, and he treats all inmates equally. (Sandoval Decl. at ¶¶ 13, 16.)

32. Defendant has never said anything discriminatory against Muslims, and on May 1, 2022, he did not clean up the mainline meal for any reason to discriminate against Muslims. (Sandoval Decl. at ¶¶ 13, 16.)]

**LENT**

33. At SATF, in the last three years there are no known inmates who requested a special diet for Lent. (Declaration of J. Bragg (Bragg Decl.) at ¶ 4.)

34. If an inmate were to request a different diet for Lent, it is very different than the Ramadan meals. A specialized Lent diet would consist of not eating meat on Good Friday, Ash Wednesday, and the five other Fridays during the 40 days of Lent. (Bragg Decl. at ¶ 5.)

35. This vegetarian diet is not difficult or costly for the prison institution to accommodate, because the inmates would eat at normal mealtimes and the institution is prepared to

offer a variety of vegetarian options already. (Bragg Decl. at ¶ 6.)

36. A specialized Lent diet would also consist of eating one full meal and two smaller meals, instead of three full meals on Good Friday and Ash Wednesday. (Bragg Decl. at ¶ 5.)

37. This is also not difficult for the institution to accommodate because inmates would eat at the normal meal hours and would simply choose to eat less during two of their meals. (Bragg Decl. at ¶ 6.)

## PASSOVER

38. Passover is a religious holiday celebrated by Jewish individuals around the world. There are eight days in this holiday. (Bragg Decl. at ¶ 7.)

39. The first and seventh day the Jewish inmates consume cold food. (Bragg Decl. at ¶ 9.)

40. For participants observing this holiday, eating, possessing, or working with any foods containing yeast is prohibited for the entire eight days. (Bragg Decl. at ¶ 10.)

41. Therefore, at SATF inmates receive specialized "Kosher for Passover" meals that are ordered several months in advance. (Bragg Decl. at ¶ 10.)

42. At SATF, inmates still receive their meals at the same time as other inmates, however, on two of the evenings, participating inmates may take their meals from the dining hall to their religious service. (Bragg Decl. at ¶ 11.)

(Doc. 41-2 at 2-8.)

## VII.    FINDINGS REGARDING UNDISPUTED FACTS

In ruling on the cross motions for summary judgment and in its recitation of the undisputed facts below, the Court has only considered the evidence that it has determined reasonably could be presented in admissible form at trial and is not in dispute.[4] Where these

---

[4] *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations"); *Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978, 984 (9th Cir. 2007) (same); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."); *Coverdell v. Dep't of Soc. & Health Servs*., 834 F.2d 758, 762 (9th Cir. 1987) (same); *Burch v. Regents of Univ. of California*, 433 F. Supp.2d 1110, 1119 (E.D. Cal. 2006) (same); *see also Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003) ("Because the diary's contents could be presented in an admissible form at trial, we may consider the diary's contents in the Bank's summary

14

findings cite evidence to which a party has objected, the objection is impliedly overruled. The Court declines to rule on objections to evidence on which it did not rely.[5]

The undersigned identifies the following facts as undisputed (hereinafter "UDF"):

1.  Ramadan is a holiday observed for one month every year by Muslims around the world.

2.  Every year, the Ramadan beginning and ending dates vary based on the location and first sighting of the new moon.

3.  Ramadan participants fast during the day and only eat between sunset and sunrise.

4.  The sighting of the moon changes every day, and the time Muslims break their fast in the evening gets later throughout the month.

5.  The meal Muslims consume in the evening, upon the first sighting of the moon, is called Iftar.

6.  The pre-dawn meals are called Suhoor (sometimes spelled Suhur).

7.  In 2022, the month of Ramadan started April 1, 2022 and ended at sundown on May 1, 2022.

8.  Before Ramadan, a memorandum was sent to SATF staff concerning the start and end dates for Ramadan, which erroneously stated Ramadan ended on May 2.

9.  At SATF, Ramadan participants are provided a Suhoor bag on the first evening of Ramadan which contains their breakfast and lunch meals, so that they can eat the meals in their cells during the night.

10. Ramadan participants are also provided Iftar (their dinner meal) to consume at chapel after the sighting of the moon.

11. The Suhoor and Iftar meals were delivered to the different SATF Facility Kitchens from the SATF Central Kitchen in a hot cart, containing the specific number of

_____

judgment motion.").

[5] "In motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." *Capitol Records, LLC v. BlueBeat, Inc.*, 765 F. Supp.2d 1198, 1200 n.1 (C.D. Cal. 2010) (citation omitted).

meals for the number of Ramadan participants at that Facility.

12.    These carts would arrive during or shortly after the service of dinner to the rest of the incarcerated persons (mainline meal).

13.    The Central Kitchen was responsible for providing each Facility at SATF with a cart of Ramadan meals for Ramadan participants.

14.    Ramadan participants would arrive at the Facility Kitchen after their evening prayer around 7:00 p.m. to get their Suhoor bag and Iftar meal and leave with both at approximately 7:15 p.m.

15.    This continued every day during Ramadan, through April 30, 2022.

16.    On May 1, 2022, the last day of Ramadan, Defendant Sandoval was working as a food cook in Facility F kitchen at SATF, where Plaintiff was housed.

17.    On May 1, 2022, the evening meal was served between 5:30 – 6:30 p.m. The first sighting of the moon for Ramadan participants to break their fast occurred at 7:37 p.m.

18.    Once the dinner meal for all other incarcerated persons was finished, Defendant cleaned up, throwing away excess food.

19.    Defendant Sandoval was not responsible for preparing the cart containing Ramadan meals for Ramadan participants at SATF on May 1, 2022.

20.    The Ramadan participants, including Plaintiff, arrived at the Facility F kitchen around 7:00 p.m., looking for their last Ramadan evening meal.

21.    Because the hot cart had not arrived, Plaintiff called his supervisor.

22.    Defendant Sandoval learned that a hot cart was not coming on the last day, because no Suhoor bag was needed for the following day; Ramadan participants would be joining other inmates for breakfast the next morning.

23.    The Central Kitchen intended for Ramadan participants to eat from the mainline meal, but this was not communicated with Defendant Sandoval.

24.    The only occasion in which a mistake occurred concerning providing Ramadan meals at SATF during Ramadan 2022 was on the evening of May 1, 2022.

16

25. In 2022, Defendant was new to working at the SATF Facility kitchen.

26. Spanish is Defendant's preferred language.

27. At SATF, in the last three years there are no known inmates who requested a special diet for Lent.

28. If an inmate were to request a different diet for Lent, it is very different than the Ramadan meals. A specialized Lent diet would consist of not eating meat on Good Friday, Ash Wednesday, and the five other Fridays during the 40 days of Lent.

29. This vegetarian diet is not difficult or costly for the prison institution to accommodate, because the inmates would eat at normal mealtimes and the institution is prepared to offer a variety of vegetarian options already.

30. A specialized Lent diet would also consist of eating one full meal and two smaller meals, instead of three full meals on Good Friday and Ash Wednesday.

31. This is also not difficult for the institution to accommodate because inmates would eat at the normal meal hours and would simply choose to eat less during two of their meals.

32. Passover is a religious holiday celebrated by Jewish individuals around the world. There are eight days in this holiday.

33. The first and seventh day the Jewish inmates consume cold food.

34. For participants observing this holiday, eating, possessing, or working with any foods containing yeast is prohibited for the entire eight days.

35. Therefore, at SATF inmates receive specialized "Kosher for Passover" meals that are ordered several months in advance.

36. At SATF, Jewish inmates still receive their meals at the same time as other inmates, however, on two of the evenings, participating inmates may take their meals from the dining hall to their religious service.

## VIII. DISCUSSION

### A. Preliminary Matters

This action does not include claims arising under RLUIPA or the Eighth Amendment.

(Docs. 1, 11 at 5.) To the extent Plaintiff's motion for summary judgment argues as much, those arguments are not relevant, and thus do not create genuine issues of material fact. As noted above, this action proceeds only on Plaintiff's claim for violation of the Equal Protection Clause of the Fourteenth Amendment. (*See* Doc. 11.)

**B. Defendant Did Not Violate Plaintiff's Equal Protection Rights**

1.   Plaintiff's Motion for Summary Judgment

In conducting the requisite equal protection inquiry, the Court has considered the record evidence and concludes that Plaintiff is a member of an identifiable class. It is undisputed that Plaintiff is an adherent of the Muslim faith and participated in Ramadan in 2022. (UDF 20.)

The Court next considers whether Defendant intentionally treated Plaintiff differently from others who were similarly situated. *Village of Willowbrook*, 528 U.S. at 564. In his motion for summary judgment, Plaintiff did not provide evidence, or even argue, that he was treated differently from members of other religious sects. Even after Defendant noted this lack of evidence in his opposition, Plaintiff still failed to produce admissible evidence under Fed. R. Civ. P. 56 that he was treated differently from similarly-situated religious adherents. Rather, Plaintiff made the conclusory statement in the argument section of his reply brief that Defendant fed "Christian, Jewish, non-denomination inmates, which were approximately 900 inmates, but when it came to the Muslims, he deprived Plaintiff of his meals." (Doc. 43 at 2.)

While it is undisputed that the hot cart did not provide meals to Ramadan participants on May 1, 2022, Plaintiff has presented no facts or evidence bearing on Defendant's treatment of inmates who participated in other religious observances. Plaintiff's mere generalized statement that "Christian, Jewish, non-denomination inmates" were treated differently is insufficient to satisfy the evidence requirement of Rule 56. Fed. R. Civ. P. 56(c)(1)(A) ("party asserting that a fact cannot be or is genuinely disputed must support the assertion … citing to particular parts of materials in the record"); *see Cafasso*, 637 F.3d at 106.

Plaintiff filed a prison grievance regarding the missed meal, and the SATF grievance investigation found the complaint to be "substantiated." (*Id.* at 9.) However, the same memorandum that confirms Defendant "did throw away additional food" also notes "that food

18

was not prepared for the Ramadan inmates. There was a discrepancy with the Ramadan meal resulting in Ramadan participants not receiving their meal." (Doc. 37 at 8.) The memorandum does not mention members of other religious sects or describe how Plaintiff was treated differently than other religious adherents. Likewise, the "Closure Chrono – Staff Misconduct Allegation" note does not mention other religious adherents or religious observance. (Doc. 43 at 2.)

Plaintiff includes the timecard for Central Kitchen workers dated August 15, 2022. (*Id.* at 9.) This information appears unrelated to the events of May 1, 2022. Plaintiff also submits the chart for Ramadan Daily Beginning & Ending Time – April / May 2022, along with the Ramadan 2022 menu. (Doc. 37 at 13; Doc. 43 at 7.) Again, the chart and menu do not reference other religious sects or observances.

Lastly, Plaintiff includes the affidavit of inmate Hubley in support of his motion for summary judgment. (Doc. 37 at 17.) In reviewing the affidavit, the Court notes that it can only consider admissible evidence in ruling on a motion for summary judgment. *Orr v. Bank of America,* 285 F.3d 764 (9th Cir.2002). A court must determine admissibility by applying the Federal Rules of Evidence. *Id.* at 778 (unauthenticated documents cannot be considered). "Authentication is a 'condition precedent to admissibility' ... We have repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment." *Id.* (citing to Fed. R. Evid. 901(a)). Federal Rule of Civil Procedure 56(e) requires that affidavits submitted in support of a motion for summary judgment must: (1) be made on the personal knowledge of an affiant who is competent to testify to the matters stated therein, (2) must state facts that would be admissible in evidence, and (3) if the affidavit refers to any document or item, a sworn or certified copy of that document or item must be attached to the affidavit. Fed. R. Civ. P. 56(e); *Orr,* 285 F.3d at 774 n. 9.

Furthermore, a declarant must show personal knowledge and competence to testify about the facts stated. *Bank Melli Iran v. Pahlavi,* 58 F.3d 1406, 1412 (9th Cir.1995) (declarations on information and belief are entitled to no weight where declarant lacks personal knowledge). The matters must be known to the declarant personally, as distinguished from matters of opinion or

hearsay. *Id.* A declarant's mere assertions that he or she possesses personal knowledge and competency to testify are not sufficient. *Barthelemy v. Air Lines Pilots Ass'n,* 897 F.2d 999 (9th Cir.1990). Personal knowledge and competence to testify may be "reasonably inferred" by describing "the nature of the declarant's position and nature of participation in matter." *Id.* at 1018.

Hearsay is a statement that "the declarant does not make while testifying at the current trial or hearing; and a party offers in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). In the absence of a procedural rule or statute, hearsay is inadmissible unless it is defined as non-hearsay under Federal Rule of Evidence 801(d) or falls within a hearsay exception under Rules 803, 804 or 807. *See* Fed. R. Evid. 802; *Orr,* 285 F.3d at 778. The proponent of the evidence has "the burden of establishing a foundation from which to conclude that the statement was within the hearsay exclusion." *Los Angeles News Serv. v. CBS Broadcasting, Inc.*, 305 F.3d 924, 934 *as amended at* 313 F.3d 1093 (9th Cir. 2002).

Here, Hubley's affidavit speculates generally that "Sandoval intentionally and deliberately threw out the Muslims' Ramadan meals." (Doc. 37 at 17.) He then states that he told Correctional Officer Ayon that Muslim inmates had not eaten yet because "Ramadan is not over" and "Correctional Officer Ayon stated, 'I know, but Sandoval said to throw away the food.'" (*Id.*) Hubley's inference that Defendant threw away the food to discriminate against Muslim inmates is speculative and is therefore inadmissible. Statements purportedly made to and by Correctional Officer Ayon are hearsay and the Court is unable to conclude that the contents of the statement could be presented in admissible form at trial. Hubley does not mention other religious sects or observances.

Thus, without supporting evidence, Plaintiff is asking this Court to speculate as to who are similarly-situated religious adherents and further speculate that they were treated differently from the Plaintiff. The Court is not permitted to engage in such speculation under Rule 56.

Plaintiff offers no evidence to show he was treated differently from other similarly-situated people or that he was discriminated against because of his religious faith or observance of Ramadan. Thus, he fails to meet his initial burden of establishing an equal protection violation,

20

and he is not entitled to summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A); *Celotex Corp.*, 477 U.S. at 322.

2. Defendant's Motion for Summary Judgment

Concerning Defendant's summary judgment motion, it is supported by sufficient evidence, including the declarations of Defendant, O'Donaughy, Bragg, and defense counsel, which attaches the allegation inquiry report, memorandum regarding the staff complaint, and excerpts from Plaintiff's deposition transcript. Through this evidence supporting the undisputed facts, Defendant has established that he was new to the F Facility kitchen in 2022. (UDF 25.) It is undisputed that the Central Kitchen provided the hot cart with Ramadan meals, that Defendant was not working in the Central Kitchen on May 1, 2022, and that Defendant was not responsible for preparing or transporting the hot meal cart at any time during Ramadan 2022. (UDF 11-13, 16, 19.) Defendant has also established that, before Ramadan, a memorandum was sent to SATF staff concerning the start and end dates for Ramadan, which erroneously stated Ramadan ended on May 2. (UDF 8.) However, the Central Kitchen intended for Ramadan participants to eat from the mainline meal on May 1, 2022, but this was not communicated with Defendant Sandoval. (UDF 23.) The only occasion in which a mistake occurred regarding the 2022 Ramadan meals was on the evening of May 1, 2022. (UDF 24.)

Regarding inmates of other religious sects, at SATF, in the last three years there are no known inmates who requested a special diet for Lent. (UDF 27.) If an inmate were to request a different diet for Lent, it is very different than the Ramadan meals. (UDF 28.) A specialized Lent diet would consist of not eating meat on Good Friday, Ash Wednesday, and the five other Fridays during the 40 days of Lent, resulting in inmates eating at normal mealtimes from a variety of vegetarian options already provided by the institution. (UDF 29-30.)

For inmates observing the religious holiday of Passover for eight days, SATF inmates receive specialized "Kosher for Passover" meals that are ordered several months in advance. (UDF 35.) At SATF, Jewish inmates still receive their meals at the same time as other inmates, however, on two of the evenings, participating inmates may take their meals from the dining hall to their religious service. (UDF 36.)

With the evidence supporting the undisputed facts, Defendant has met his initial responsibility, and the burden shifts to Plaintiff to establish that a genuine issue of material fact exists. *Matsushita*, 475 U.S. at 586.

In opposition to summary judgment, Plaintiff attached his declaration, the declaration of inmate Leonard Henderson, declaration of inmate P. Lewis, the closure chrono from Warden Cisneros regarding Plaintiff's staff misconduct allegation, and a chart showing Ramadan Daily Beginning & Ending Time – April/May 2022. The Court examines each attachment in turn.

First, Defendant argues that the Plaintiff's declaration is a sham.

> The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony. This sham affidavit rule prevents a party who has been examined at length on deposition from rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony, which would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact…. But the sham affidavit rule should be applied with caution because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment. In order to trigger the sham affidavit rule, the district court must make a factual determination that the contradiction is a sham, and the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit.

*Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (citations and internal quotation marks omitted) (first alteration in original). A declaration may be considered "to be a sham when it contains facts that the affiant previously testified he could not remember." (*Id.* at 1080-81.) However, "newly-remembered facts, or new facts, accompanied by a reasonable explanation, should not ordinarily lead to the striking of a declaration as a sham." (*Id.* at 1081). "[T]he non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition and minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." (*Id.* (citations and internal quotation marks omitted).)

Here, in his declaration of August 7, 2025, Plaintiff attests: "Defendant stated he didn't care that Muslim[s] didn't have meal[s] for Ramadan, its[sic] over and done with." (Doc. 46 at 15.) Plaintiff also said that Defendant "stated its over and done with, meal is finished" and

"Defendant Sandoval may have never said anything discriminatory against Muslim[s], but on May 1, 2022, he did clean up the mainline meal for the sole reason to discriminate against Muslims." (*Id.*) These assertions are contrary to Plaintiff's his earlier deposition taken on April 22, 2025. (Doc. 41-6 at 19-42). Plaintiff testified that he never spoke to Defendant or heard what Defendant said. Instead, Plaintiff spoke to other inmates and assumed that Defendant's actions were directly related to Ramadan:

**Q. So it was around 7:15 on May 1st, 2022 when you went to the dining area. You maybe got there within a couple minutes, you said it took to you walk there. And then that's when you realized that all the food had been thrown away?**

A. Well, when we got there, like I said, we had some people designated to speak to the kitchen staff. And so they went back there to see if they were ready to -- because we always let Islamic person -- so the person went back there and was told. And then we were informed at the -- afterwards.

**Q. Who was that designated person that talked to kitchen staff on May 1st, 2022?**

A. Lee. Yeah. Lee.

**Q. And so Lee talked to kitchen staff. Do you know which kitchen staff he talked to? Was it inmates? Was it defendant Sandoval? Was it someone else?**

A. Because I wasn't within this -- privileged to be in this conversation, I'm going to assume it's Sandoval. I'm not -- I was not there during the conversation.

**Q. So you don't know actually who Mr. Lee talked to on May 1st, 2022 when he went to go talk to kitchen staff?**

A. Well, he told us it was Sandoval. He told us it was Sandoval. We seen him speaking to Sandoval, you know what I mean. I mean, I was like in the kitchen, but I wasn't side-by-side to hear the conversation.

(Doc. 41-6 at 32-33.)

**Q. How do you know that Mr. -- or inmate Lee and defendant Sandoval spoke if you didn't see them speak?**

A. No, I seen them speak. I just didn't hear the conversation. I told you I wasn't on the side of them to hear the conversation.

(*Id.* at 35.)

> **Q. Did Lee or Sandoval give you a reason why the food was thrown out?**
>
> A. That they, I guess -- he said the Ramadan was over. That was the only reason why I'm assuming. I don't recall who told me. It was a lot of Muslims in there. We all have a conversation about the same time. It was 2022. I don't know who said what about that. But, you know...

(*Id.* at 37.)

> **Q. And you don't know anything that defendant Sandoval said on May 1st, 2022. Correct?**
>
> A. Heard statements. Heard statements by kitchen workers saying he didn't care. It was "Ramadan was over." And warning, you know. So, basically, he was warned. Before the food was thrown out, he was warned and he still didn't care.

(*Id.* at 39.)

Plaintiff's deposition testimony establishes that he did not speak to Defendant or hear any conversation Defendant had on May 1, 2022 and did not know what Defendant said, which directly contradicts his declaration statements purporting to repeat what Defendant said. (*See* Doc. 46 at 15.) Despite having the opportunity to do so, Plaintiff has provided no explanation as to why his version of events has changed throughout the course of this litigation. Thus, the Court finds that the version of events in Plaintiff's declaration is a sham and should be disregarded.

In considering the declarations of inmates Leonard Henderson and P. Lewis, the Court again notes that it can only consider admissible evidence in ruling on a motion for summary judgment. *Orr,* 285 F.3d at 778. The content of each declaration is an exact copy of Plaintiff's declaration, except for the exclusion of paragraph 5. (Doc. 46 at 14-19.) In fact, Henderson and Lewis both state "I am the Plaintiff in this instant case and is [sic] currently houses [sic] at Substance Abuse Treatment Facility State Prison." (Id. at 16, 18.) Neither Henderson nor Lewis state that they were present on May 1, 2022 when the Ramadan participants arrived at the kitchen for their meals or that they spoke with Defendant at any time. Plaintiff does not otherwise describe the position or participation of Henderson or Lewis in the events of May 1, 2022, and thus, the Court cannot reasonably infer that Henderson or Lewis have personal knowledge or competence to testify as to matters copied from Plaintiff's declaration. Moreover, Plaintiff

24

testified at deposition that only one inmate representative, named Lee, spoke with Defendant on May 1, 2022. (Doc. 41-6 at 32-33.) Thus, the declaration statements from Henderson and Lewis about Defendant's statements and intent are based on hearsay.

Plaintiff has not met his burden to show that the declarations of Henderson and Lewis are based on personal knowledge or that their statements fall within a hearsay exception. Accordingly, the declarations are not admissible evidence and cannot demonstrate a genuine dispute of material fact.

The Court looks to the remaining documents attached to Plaintiff's brief in opposition to summary judgment. Plaintiff appears to argue that the excerpt from the Closure Chrono – Staff Misconduct Allegation conclusively establishes an equal protection violation because his grievance was sustained. (Doc. 46 at 6.) However, while the warden confirmed that the meals were thrown away, he did not state that Defendant discarded the food with an intent to discriminate against Ramadan participants. (*Id.*) To the contrary, in reviewing the remainder of the allegation inquiry report underlying the chrono closure form, the inquiry note states:

> Based on the combined interviews and documentation, the Complainant's allegation[] has been substantiated. It was determined Correctional Cook N. Sandoval did throw away the additional food after evening meal was completed but the aforementioned food was not prepared for Ramadan participants. The Ramadan participants' evening meals would normally be transported in a cart separated from the original carts but on May 1, 2022, the separate Ramadan cart was not delivered … Although the Ramadan meals were not prepared, all efforts to accommodate the Ramadan participants were conducted and at no time were any individuals discriminated against.

(Doc. 41-6 at 7-8). Plaintiff also attached the Ramadan menu and the Ramadan Daily Beginning and Ending Time – April / May 2022. None of the documents presented by Plaintiff demonstrate that Defendant was responsible for the meal cart to Ramadan participants, that he intended to discriminate against Plaintiff, or that he treated other religious sects differently. Accordingly, Plaintiff has failed in his burden to present evidence that a genuine dispute of material fact exists as to his equal protection claim. *See Matsushita*, 475 U.S. at 586. Thus, Defendant is entitled to summary judgment. *Id.* at 587; *Celotex Corp.*, 477 U.S. at 322.

25

## C. Defendant is Entitled to Qualified Immunity

Lastly, Defendant contends that he is entitled to qualified immunity. Defendant argues that he did not intentionally discriminate against Plaintiff or treat him differently than other similarly situated individuals. (Doc. 41 at 18.) Defendant contends that the "hot cart containing the Ramadan Iftar meal on May 1, 2022 never arrived at Facility F" and that "Defendant made efforts to accommodate Plaintiff by providing an alternative meal ... [but] Plaintiff refused this alternative accommodation." (*Id.*) Defendant argues that, because there was no constitutional violation, a reasonable person would have believed these actions were lawful." (*Id.*) "An error that prevented Plaintiff from receiving a single Ramadan meal is also not clearly established as a violation of the Constitution." (*Id.*) Thus, Defendant argues he is entitled to qualified immunity.

Plaintiff opposes Defendant's position by stating "Defendant was acting under the color of law excluding Defendant from any qualified immunity." (Doc. 46 at 2.) Plaintiff cites *Willingham v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003), *Griffin Indus, Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007), and *Monroe v. Pape*, 365 U.S. 167 (1961) and argues that "[a]ll you need to show is that the person you sue was working for the prison system or some other part of state or city government at the time of the acts you're suing about." (Doc. 46 at 2.)

### *Applicable Legal Standards*

Government officials enjoy qualified immunity from damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The plaintiff bears the burden of proving that the right allegedly violated was clearly established at the time of the violation; if the plaintiff meets this burden, then the defendant bears the burden of establishing that the defendant reasonably believed the alleged conduct was lawful. *See Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). Plaintiff must show that the facts, taken in a light most favorable to him, demonstrate (1) the defendant's conduct violated a constitutional right, and (2) the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The district court has discretion to determine which of the first two *Saucier* factors to analyze first. *See O'Doan v. Sanford*, 991 F.3d 1027, 1036 (9th Cir. 2021).

"Clearly established" means that "the right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curium) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *Saucier*, 533 U.S. at 202. The determination of whether a right is clearly established must be "particularized" to the facts of the case. *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Although "[the Supreme] Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *White*, 580 U.S. at 79). In the absence of a case directly on point, the court may compare relevant "specific factors" to determine whether a reasonable officer would have known that the conduct in question was unlawful. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 947 (9th Cir. 2017). Even if the plaintiff has alleged a violation of a clearly established right, the official is protected by qualified immunity if he "reasonably but mistakenly believed that his . . . conduct did not violate that right." *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001); *see Saucier*, 533 U.S. at 205. In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

### *Analysis*

Here, as discussed above, the evidence in the record does not raise a triable issue of fact that there were violations of Plaintiff's constitutional rights. The inquiry typically ends, and Defendant prevails on his qualified immunity defense.

Even so, concerning Plaintiff's equal protection claim, it is well established that inmates who adhere to a minority religion must be afforded a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Cruz*, 405 U.S. at 322. Here, there is no genuine dispute of material fact to indicate Defendant prevented Plaintiff from pursuing his faith as compared to others or that he intentionally discriminated against Plaintiff based upon his beliefs. It is undisputed that Plaintiff received all other meals during Ramadan in 2022 and that the Central Kitchen provided the meals

27

to Ramadan participants by a hot cart, sent after the mainline meal was finished. The evidence shows that prison guidance memos were in conflict as to the end date of Ramadan that year. (UDF 8.) The record supports a finding that, while he was mistaken, Defendant reasonably believed that the hot cart would provide the Ramadan meal on May 1, 2022, and his conduct was not unlawful. *Sorrels,* 290 F.3d at 969; *Jackson*, 268 F.3d at 651 (official is protected by qualified immunity if he reasonably, but mistakenly, believed his conduct did not violate plaintiff's rights).

The Court has considered the case law cited by Plaintiff. In *Willingham v. Loughnan*, the Eleventh Circuit considered a plaintiff's claims of excessive force after being shot by police officers and held that officers were entitled to qualified immunity because they did not violate clearly established federal law in 1987. *Willingham*, 321 F.3d at 1304. In *Griffin Indus, Inc. v. Irvin*, the Eleventh Circuit considered a chicken rendering plant's claims of due process and equal protection violations after state and local officials allegedly subjected the plant to more rigorous environmental regulation than its competitor.  *Griffin Indus, Inc.*, 496 F.3d at 1194-98, 1202-03. The circuit held that the plant did not establish a constitutional violation because it failed to prove a competitor was similarly situated. *Id.* at 1207. The circuit also held that, even assuming a constitutional violation, officials did not violate clearly established rights and were entitled to qualified immunity. *Id.* at 1210. Finally, Plaintiff cites *Monroe v. Pape*, but the United States Supreme Court overruled *Monroe* in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690, 700 (1978), holding that Congress intended municipalities and other local government units to be included among those persons to whom § 1983 applies.

None of the cases cited by Plaintiff address equal protection for religious adherents or otherwise sets forth relevant "specific factors" to determine if a reasonable prison cook would have known that Defendant's conduct was unlawful.

Accordingly, this Court finds Defendant is entitled to qualified immunity on Plaintiff's Fourteenth Amendment claim.

### D.  Summary of Summary Judgment Findings

The undersigned finds Plaintiff's summary judgment motion should be denied, and Defendant's summary judgment motion should be granted. Further, Defendant is entitled to

qualified immunity on Plaintiff's Fourteenth Amendment equal protection claim.

### IX.   CONCLUSION AND RECOMMENDATION

Accordingly, based on the foregoing, the Court **HEREBY RECOMMENDS**:

1. Plaintiff's summary judgment motion (Doc. 37) be **DENIED**;

2. Defendant's summary judgment motion (Doc. 41) be **GRANTED**; and

3. That judgment be entered in favor of Defendant and the Clerk of the Court be directed to close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **March 23, 2026**   _____

UNITED STATES MAGISTRATE JUDGE